**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DONALD STEPHEN REDUS,** | ) | |
| *individually and on behalf of all others* | ) | |
| *similarly situated*, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | **Case No. 4:25-CV-01387-NCC** |
| | ) | |
| **BIRNER STL LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Compel Arbitration and to Stay Proceedings (Doc. 23).  Defendant filed a Memorandum in Support (Doc. 24).  Plaintiff filed a Memorandum in Opposition (Doc. 27).  Defendant filed a Reply (Doc. 29).  And Plaintiff filed a Sur-Reply (Doc. 32).  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 18).  For the following reasons, Defendant's Motion will be **GRANTED**.

### I.  Background

Plaintiff Donald Stephen Redus ("Redus"), on behalf of himself and others, brings a collective action for overtime pay under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, against Defendant Birner STL LLC ("Birner") (Doc. 10 at 4).  He also brings an individual claim for overtime pay under the Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 290.500, *et seq.* (*id.* at 5).

Birner owns and operates a Renewal by Andersen business providing window and door replacement services across Missouri (*id.* at 2).  Redus was employed as a Measure Technician (*id.* at 3).  He alleges that Birner had a practice of paying only a portion of overtime during busy

summer months and none during slower months, regardless of hours worked (*id.*).  He further alleges that Birner employs ten Measure Technicians all subjected to the same practice (*id.* at 3-4).

Birner has filed a Motion to Compel Arbitration (Doc. 23).  In support, Birner submits a Mutual Arbitration Agreement ("Agreement") apparently digitally signed by Plaintiff on February 7, 2025 at 12:38:53 PM (Doc. 23-2).  Under the Agreement, Redus agrees to submit to binding arbitration all disputes and claims regarding his employment, including wage and hour claims under the FLSA and Missouri law (*id.* at 3).  The Agreement includes a Class Action Waiver requiring that such claims be arbitrated on an individual basis (*id.* at 6).  It also includes a "Right to Opt-Out" provision (*id.* at 9).  Birner further submits a declaration by its Human Resources ("HR") Manager, which explains the online portal used to onboard Redus and attests to the authenticity of the Agreement (Doc. 23-1).

## II.  Standards

### A.  FAA

The Federal Arbitration Act ("FAA") applies to contracts evidencing transactions "involving commerce."  9 U.S.C. § 2; *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461 (8th Cir. 2001).  Under the FAA:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4.  The FAA reflects a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  "[C]ourts must place arbitration agreements on an equal footing with other contracts" and enforce them according to their terms.  *Id*.  When

2

there is an enforceable agreement to arbitrate, federal courts "shall make an order directing the parties to proceed to arbitration." 9 U.S.C. § 4. The "court's role under the FAA is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004); *see also Foster v. Walmart, Inc.*, 15 F.4th 860, 862 (8th Cir. 2021). Agreements to arbitrate are "'a matter of contract,' meaning that disputes are arbitrable only to the extent an agreement between the parties says so." *Foster*, 15 F.4th at 862 (quoting *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010)). In determining whether the parties agreed to arbitrate, federal courts apply "state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

### B.  Rule 56

A motion to compel arbitration is properly analyzed under Federal Rule of Civil Procedure 12(b)(6), the motion to dismiss standard, or Federal Rule of Civil Procedure 56, the summary judgment standard. *City of Benkelman, Neb. v. Baseline Eng'g Corp.*, 867 F.3d 875, 881 (8th Cir. 2017). If a party presents evidence outside the pleadings which is not excluded by the Court, the motion must be treated as one for summary judgment under Rule 56. *Id.* at 882. Here, evidence outside the pleadings has been presented, so the Court will apply the summary judgment standard under Rule 56. *Ballou v. Asset Mktg. Servs., LLC*, 46 F.4th 844, 851 (8th Cir. 2022). Summary judgment is proper if, viewing the record in the light most favorable to the nonmovant, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to [relief] as a matter of law." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citation modified). A defendant seeking to compel arbitration bears the burden to prove that a valid arbitration agreement exists. *See id*. Once a motion to compel arbitration is

3

properly made and supported, the nonmoving party may not simply rest upon the allegations in his pleadings: "[A] party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002); *see also City of Benkelman*, 867 F.3d at 881-82.

### III. Discussion

Electronically signed agreements are enforceable under Missouri law, and when presented with the issue of their validity courts "apply traditional principles of contract law and focus on whether the plaintiff had reasonable notice of and manifested assent to the online agreement." *Major v. McCallister*, 302 S.W.3d 227, 229 (Mo. Ct. App. 2009); *see also Foster*, 15 F.4th at 863 ("Internet contracts, just like other agreements, require mutual assent between the parties"); *Perficient, Inc. v. Palfery*, No. 4:20-CV-618 MTS, 2022 WL 1102117, *5 (E.D. Mo. Apr. 13, 2022) (noting "Missouri courts and federal courts applying Missouri law have held 'click-to-accept' types of online agreements [ ] are enforceable").

Redus disputes formation of the Agreement (Docs. 27, 32). He argues that Birner has not provided sufficient evidence of his assent, such as contemporaneous onboarding records, audit logs, version histories, or metadata (Doc. 27 at 1-3).

Birner has submitted a copy of the Agreement as well as the declaration of its HR Manager (Docs. 23-1, 23-2). The declaration attests as follows. When Redus was hired, Birner used the services of a Professional Employer Organization, Insperity PEO Services, L.P. ("Insperity"). As part of the onboarding process, he was provided with a link to an online portal to Insperity's system to complete forms related to his employment. Prior to reviewing and signing the forms, he was required to set up a profile within Insperity's system that verified his electronic signature was, in fact, his and had the same effect as a physical signature. Redus set

4

up his profile through the Insperity portal, through which he was directed to review and sign multiple forms on or about February 7, 2025.  One of the forms he reviewed and executed was the Agreement.  Redus electronically signed the Agreement on February 7, 2025.  He was given the opportunity to "opt-out" within 30 days but did not do so.  The HR Manager further attests that the copy of the Agreement filed with the Court is a true and accurate copy.  The declaration is signed and under penalty of perjury.

Once Birner has properly supported its motion, Redus must identify specific evidence in the record demonstrating a material factual dispute.  *Tinder*, 305 F.3d at 735; *see also Carter v. Pulaski Cnty. Special Sch. Dist.*, 956 F.3d 1055, 1059 (8th Cir. 2020) (nonmoving party may not rely on allegations or denials but must substantiate allegations with sufficient probative evidence permitting a finding in that party's favor on more than mere speculation or conjecture).  Notably, Redus merely raises the specter of "evidentiary gaps" (Doc. 27 at 3).  He does not dispute that he had the opportunity to review the Agreement and signed it.  Nor does he assert any specific flaws in formation or submit any evidence undermining his assent.

The Court finds that Birner has submitted sufficient unrebutted evidence of formation. *See Young v. Hoogland Foods, LLC*, No. 4:19 CV 456 CDP, 2020 WL 555106, at *1–3 (E.D. Mo. Feb. 4, 2020) (finding broad challenge to authenticity of arbitration agreement and allegations plaintiff did not recall signing the agreement insufficient to establish genuine issue of material fact where defendant submitted copy of agreement and affidavit of its Director of Personnel & Development); *Meredith v. Bayer Crop Sci., LLC*, No. 4:23-CV-01012-SEP, 2024 WL 4024496, at *4 (E.D. Mo. Sept. 3, 2024) (finding declaration explaining onboarding process and New Hire Form with plaintiff's signature sufficient to authenticate form where plaintiff merely claimed defendant had not shown she was the person assigned the electronic signature); *cf. Williams v. Insomnia Cookies, LLC*, 715 F. Supp. 3d 1205, 1212 (E.D. Mo. 2024) (taking up

5

challenge to formation of arbitration agreement in FLSA case where plaintiff submitted a declaration attesting to his account).[1]

Redus challenges the Class Action Waiver on the same basis (Doc. 27 at 6-7). That argument is also denied. *See also Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 525 (2018) (approving class action waivers, including as to FLSA collective actions).

Finally, Redus argues unconscionability (Doc. 27 at 5-6). Again, he merely identifies generic "evidentiary gaps," arguing that Birner has not shown that arbitration was negotiable, meaningfully explained, or distinguished from routine onboarding documents and that Birner has not shown that Redus could decline arbitration or that the opt-out was disclosed or realistically available. Redus further argues, summarily, that the adhesive manner of imposition and the one-sided effect of the Class Action Waiver render the agreement unconscionable. These arguments are denied. *See Leonard v. Delaware N. Companies Sport Serv., Inc.*, No. 4:15 CV 1356 CDP, 2016 WL 3667979, at *3 (E.D. Mo. July 11, 2016) (denying unconscionability argument where no evidence was presented that the agreement or arbitration clause was non-negotiable); *see also Warren v. Paragon Techs. Grp., Inc.*, 950 S.W.2d 844, 846 (Mo. 1997) (en banc) (stating that absent fraud or duress, a party who signs a document after having an opportunity to review its contents is bound by its terms, and "[p]arties are presumed to read what they sign"); *Bertocci v. Thoroughbred Ford, Inc.*, 530 S.W.3d 543, 553 (Mo. Ct. App. 2017) (stating that a party "may not avoid the consequences of the agreement on the basis that they did not know what they were signing"); *Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220, 228 (Mo. 2013) (en banc) (stating that "[a] signer's failure to read and understand a contract is not, without fraud or the signer's lack of capacity to contract, a defense to the contract"); *see also Epic Sys. Corp.*, 584

---

[1] Accordingly, Redus' request for limited discovery (Doc. 27 at 7) is denied.

6

U.S. at 525 (approving class action waivers as to FLSA collective actions); *Concepcion*, 563 U.S. at 352 (holding FAA preempted California common-law rule barring class action waivers as unconscionable); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1055 (8th Cir. 2013) (holding class action waivers are enforceable in FLSA cases).[2]

The Court will grant Birner's request to stay this proceeding pending arbitration. *See Smith v. Spizzirri*, 601 U.S. 472 (2024).

### IV.  Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration and to Stay Proceedings (Doc. 23) is **GRANTED**.  This proceeding is **STAYED** pending arbitration.

**IT IS FURTHER ORDERED** that the parties shall notify the Court within ten (10) days of the completion of arbitration.

Dated this 9th day of March, 2026.

    /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE

---

[2] The Agreement states that "any disputes about the interpretation, validity, applicability, enforceability, unconscionability, or waiver of the Class Action Waiver … may only be determined by a court" (Doc. 23-2 at 3). *See also Owen*, 702 F.3d at 1055 (evaluating class action waiver as to FLSA claims).

The Agreement also states that "[t]he Arbitrator … shall have exclusive authority to resolve any dispute regarding the … unconscionability … of this Arbitration Agreement" (Doc. 23-2 at 3).  However, Redus' unconscionability arguments are ill-formed and easily dismissed.